Filed 11/27/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| In re | B292582 |
|---|---|
| KAHEAL JEVON PARRISH | (Los Angeles County Super. Ct. No. BA260528) |
| On Habeas Corpus. | |

ORIGINAL PROCEEDING. Petition for writ of habeas corpus. Kathleen Kennedy, Judge.  Petition denied.

James M. Crawford, under appointment by the Court of Appeal, for Petitioner.

Xavier Becerra, Attorney General, Lance E. Winters, Senior Assistant Attorney General, Zee Rodriguez, Supervising Deputy Attorney General, Michael C. Keller, Deputy Attorney General, for Respondent.

————————————

This habeas corpus petition requires us to assay culpability for a 2004 murder. The felony murder doctrine can saddle a person with a murder conviction even when that person was not the main killer. Here, for instance, Kahael Jevon Parrish was one of three who, in 2004, went to rob a market. Parrish had no gun, but both his partners did. One fired a deadly shot into a customer's head. Parrish pulled no trigger, but a jury convicted Parrish of felony *murder*. The trial court imposed life in prison without parole. Was that unconstitutionally harsh? We conclude it was not. Parrish was a major participant in the robbery and showed reckless indifference to human life, so we deny his habeas corpus petition. Code references are to the Penal Code.

I

We review the record to see if rational jurors could have found the elements of the special circumstances allegation beyond a reasonable doubt. We view evidence in a light favorable to the prosecution. (*People v. Clark* (2016) 63 Cal.4th 522, 610 (*Clark*).) In this light, the facts are as follows.

Three men planned to rob a market. The three were Parrish, Earl Childs, and Zack Gaines. Parrish and Gaines reconnoitered the market the day before the robbery. (*People v. Parrish* (2007) 152 Cal.App.4th 263, 267, 276 & fn. 2 (*Parrish*).)

The deadly day was February 4, 2004. Parrish drove Childs and Gaines to the market. Parrish had given Gaines a .380 handgun to use, and Parrish knew Gaines carried it. Parrish also knew Childs had a gun. Parrish and Childs entered the market and walked around. Gaines came in to complain they were taking too long. Childs drew his gun, announced the robbery, and told Parrish to jump over a counter to search an employee for weapons. Parrish did that. Parrish saw the store

2

owner pushing an alarm and said "she is calling the police." Parrish was leaping the counter heading for the exit when he heard a gunshot and saw a flame. Video recorded Childs shooting a customer in the head as Parrish jumped the counter. Parrish, Childs, and Gaines got in Parrish's car. Parrish drove them away. (*Parrish*, *supra*, 152 Cal.App.4th at p. 268.)

Parrish's trial defense was duress. (*Parrish*, *supra*, 152 Cal.App.4th at p. 277.) Parrish testified he joined the Rolling 30s Harlem Crips gang before age 13. Gaines too was a Rolling 30s member. Parrish said fellow gang members had beat him in the past for cooperating with law enforcement. Parrish claimed he abandoned the gang, but gang members coerced him, on pain of death, into participating in this robbery. (*Id.* at p. 279.)

The prosecution responded that Parrish's robbery motive was not to avoid injury but to renew and to improve his position in the gang after having cooperated with law enforcement. (*Parrish*, *supra*, 152 Cal.App.4th at p. 279.)

The jury convicted Parrish on all counts, evidently rejecting his duress defense and accepting the prosecution's theory. The special circumstance allegation was the murder was committed in the course of a robbery. The jury found this allegation true.

We affirmed Parrish's conviction on appeal. (*Parrish*, *supra*, 152 Cal.App.4th at p. 280.) The Supreme Court denied review on September 25, 2007.

In 2015 and 2016, the California Supreme Court decided *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *Clark*. We return to these cases shortly.

After *Banks* and *Clark*, Parrish filed a habeas corpus petition challenging his convictions of attempted robbery and first degree murder. The Superior Court denied the petition

because evidence "overwhelmingly supported" Parrish's role as a major robbery participant. "The jury did not believe" Parrish's claim that gang members who had become his enemies coerced his actions. Parrish raised the same claims in this court, which we rejected.

On June 12, 2019, the California Supreme Court issued an order to show cause returnable in this court as to why Parrish is not entitled to relief under *Banks* and *Clark*.

The decisions in *Banks* and *Clark* summarized the constitutional issue and the constitutional result, as follows.

The constitutional issue arises when there is a murder and a defendant is involved in some way but perhaps only peripherally and is not the chief agent of death. Thus a defendant with relatively low culpability might get an extremely grave sentence signaling extremely high culpability. Federal constitutional law bars cruel and unusual mismatches of culpability and consequence. (See *Enmund v. Florida* (1982) 458 U.S. 782; *Tison v. Arizona* (1987) 481 U.S. 137.) The problem is to define how much culpability is required before a state may impose very grave sentences on relatively less culpable actors.

The *Banks* and *Clark* decisions formulated the rule to which we now hew.

In *Banks*, the California Supreme Court found it was not enough for the defendant merely to be a minor participant who never knew his actions would involve a grave risk of death. (*Banks*, *supra*, 61 Cal.4th at p. 807.)

In *Clark*, the court reached a similar result. The defendant was a mastermind who sought to minimize the risk of violence at his planned robbery. (See *Clark*, *supra*, 63 Cal.4th at pp. 621–623.) This mastermind timed the robbery for closing time and

4

arranged for his robbery team to interact with victims only briefly. (*Id.* at p. 620.) He also tried to minimize or eliminate bullets for the one gun at the scene. (*Id.* at pp. 612–613, 618–619, and 621–622.) Although one of his team began shooting anyway, the mastermind did not know this shooter had a propensity for violence. (*Id.* at p. 621.)

In essence, *Clark* held it unconstitutional to impose a death sentence on a safety-conscious mastermind just because his minion unexpectedly killed someone during the robbery.

*Clark* laid down two requirements. Parrish satisfies both.

The first requirement is the defendant — here, Parrish — was a "major participant" in the underlying felony, which here was robbery. (*Clark*, *supra*, 63 Cal.4th at p. 611.) Parrish satisfied this requirement by actively participating in every stage: supplying a gun, casing the target, entering the store to rob it, going to search the employee, announcing the police alert, and driving the robbery team to and from the market.

The second requirement is more complex: the required mental state, or mens rea. The *Clark* decision went to considerable lengths to make precise its analysis of the required mental state. It mentioned the phrase "specific intent" only once. (See *Clark*, *supra*, 63 Cal.4th at p. 615.) Following the lead of the Supreme Court of the United States, *Clark* relied heavily on the Model Penal Code. (See *id.* at pp. 616–617 & fn. 73, 622.)

The second requirement thus demands proof Parrish acted with reckless disregard for human life. In particular, the Model Penal Code asks whether Parrish "consciously disregard[ed] a substantial and unjustifiable risk" to human life. (*Clark*, *supra*, 63 Cal.4th at p. 617.)

5

Parrish's actions satisfy this second requirement.  The *Clark* decision structured this analysis in five steps.

FIRST, was Parrish ignorant of the guns at the robbery? (See *Clark*, *supra*, 63 Cal.4th at p. 618.)  No.  Parrish *supplied* one of the guns.  He knew about the other.  Two guns for three robbers is more than minimal.  The more guns, the greater the chance of gunfire and death.  Parrish knew this risk and took it.

SECOND, was Parrish physically absent from the robbery scene?  (*Clark*, *supra*, 63 Cal.4th at p. 619.)  No.  Parrish was there start to finish.  He had an "opportunity to act as a restraining influence on murderous cohorts."  (*Ibid.*)  He likewise had a chance to help the victim.  (*Ibid.*)  But Parrish passed up these opportunities.  That shows reckless disregard for life.

THIRD, did Parrish take steps to limit the duration and extent of interaction with innocents so as to minimize risk?  No. The robbery was not planned for a low-traffic moment, like closing time.  (Cf. *Clark*, *supra*, 63 Cal.4th at p. 620 ["defendant planned the robbery for after closing time, when most of the store employees were gone"].)  This conduct displays a reckless indifference to risk.

FOURTH, did Parrish have reason to trust his cohorts to be peaceable?  No.  One was a fellow longtime Crips gang member. The other, according to Parrish's own testimony, was threatening to kill Parrish himself.  One cannot equate this situation with the facts in *Clark*, where the defendant had no reason to suspect his robbery team was prone to violence.  (*Clark*, *supra*, 63 Cal.4th at p. 621.)

FIFTH, did Parrish make efforts to minimize the risks of violence during the robbery?  (*Clark*, *supra*, 63 Cal.4th at pp. 621–623.)  No.  Unlike the defendant in *Clark*, Parrish took no

actions "with an eye to minimizing the possibilities for violence." (*Id.* at p. 623.) In this analysis the *Clark* decision again cited the Model Penal Code's definition of recklessness, now to emphasize it contains both a subjective and an objective element. (*Id.* at pp. 622–623.) Neither element helps Parrish. Subjectively, Parrish was indifferent to the risks he was creating. Objectively, he took no steps to reduce risk of harm or to alleviate actual harm. He did not pause, for instance, to see if the victim was dead.

## DISPOSITION

The petition is denied.

WILEY, J.

We concur:

BIGELOW, P. J.

GRIMES, J.